## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROB KAINTZ, individually
and on behalf of all others
similarly situated,**

      **Plaintiff,**

**v.**                             **CASE NO: 8:20-cv-2115-T-33AAS**

**THE GOODMAN GROUP, INC.,**

      **Defendant.**
_____/

### UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

The Class Representative, Rob Kaintz ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1] On April 2, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 35). In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 3, ¶ 10). Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members and, thus far, <u>zero</u> have objected to the Settlement. Not only that, only three requests for exclusion were

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on February 18, 2021. (*See* Doc. 27-2, pp. 2-25).

received.    Considering the size of the Class, coupled with the fact this is a "claims paid" settlement (meaning all class members will automatically receive a check without having to file claims), and no funds revert to Defendant (instead they will be paid to *cy pres* recipient),[2] the Settlement is an excellent outcome.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support thereof, Plaintiff states as follows:

**I.    BACKGROUND.**

**A.    Allegations included in Named Plaintiff's Complaint.**

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  The lawsuit generally alleges Defendant provided Plaintiff and other class members with a deficient COBRA Notice.  More specifically, Plaintiff asserted that Defendant's COBRA Notice did not adequately inform him how to exercise his rights to elect COBRA coverage because the Notice failed to: (i) include the date by which election must be made; (ii) identify the Plan Administrator; and, finally, (iii) was not written in a manner calculated to be understood by the average plan participant, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*.

---

[2] The proposed *cy pres* recipient is Bay Area Legal Services, a non-profit law firm. *See* Doc. 34, p. 2.

As a result of the alleged violations in the Complaint, Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of himself and all others similarly situated.

On October 16, 2020, Defendant filed a Motion to Dismiss (Doc. 9). During the pendency of Defendant's Motion to Dismiss, the two sides agreed that an early mediation to discuss a potential class-wide resolution might be fruitful.  On October 16, 2020, the Parties filed a Joint Motion For Referral to Mediation and to Abate the Action (Doc. 10), asking the Court to stay the entire case pending completion of mediation.  The Court granted the Joint Motion (Doc. 11), and this case was stayed.   Mediation was then scheduled for December 15, 2020, with highly-respected mediator Mark Hanley (whom this Court routinely appoints as mediator).  As explained further below, with the assistance of Mr. Hanley, the parties eventually resolved this case and now seek final court approval of their class action settlement.

## B.    **Defendant's Defenses**.

Had mediation been unsuccessful, Defendant had available to it a myriad of defenses to Plaintiff's allegations.  Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class.  In fact, as part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit nor concede any actual or potential fault, denies any wrongdoing or liability in connection with any facts or claims that have been alleged against

it in the Action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever.

The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

## C.    **Settlement Negotiations and Mediation.**

As set forth above, the Parties attended an all-day mediation before a highly-respected mediator, Mark Hanley, on December 14, 2020.   After extensive arm's lengths negotiations between experienced counsel for a full day with no deal reached, the Parties opted to continue negotiations after mediation concluded (but still with Mr. Hanley's assistance).  After further negotiations, on January 5, 2021, a tentative deal was reached.

## D.    **Benefits to the Settlement Class and Named Plaintiff.**

The Settlement Agreement, if granted final approval, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay $112,400.00 to the Common Fund.

4

The parties negotiated the case on a common fund basis, meaning that the settlement amounts the parties were exchanging were inclusive of all attorneys' fees and costs, and administrative expenses. The parties did not negotiate attorneys' fees until after all terms related to the size of the common settlement fund, and the class definitions, were agreed upon.

Specifically, the proposed settlement provides for settlement payments to be made to approximately 2,889 class members. Defendant will create a common fund for class members consisting of $112,400.00. The class members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $38.90 and a net payment of approximately $18.54.[3] These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.[4] In sum, the Parties respectfully submit that the proposed settlement is fair, reasonable, and adequate and ask that it be approved accordingly. It was reached at arm's length negotiations conducted by experienced practitioners with the assistance of mediator Mark Hanley.

---

[3] $112,400 - $37,466.66 (attorneys' fees) - $478.45 (litigation costs) - $20,896 (settlement admin costs) = $53,558.89 / 2,889 = $18.54.

[4] *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 member class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

The Settlement Agreement also provides that Plaintiff's Counsel's fees are to come out of the fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees, plus reasonable and customary litigation costs. Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees being approved.

**E.    Administration of Notice.**

The Parties hired a private, third-party vendor, American Legal Claim Services, LLC, ("Settlement Administrator") to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Common Fund. The attached declaration of Keith Salhab, who works for the Settlement Administrator, carefully explains exactly what steps the Settlement Administrator undertook to disseminate the Court-approved notice.

**F.    The Court's Order granting Preliminary Approval of the Settlement.**

On April 2, 2021, this Court issued an order preliminarily approving the Class Action Settlement Agreement between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 35.) In that Order, the Court found that the settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 3, ¶ 10). Following entry of that Order, and as further explained by the attached sworn

declaration from the Settlement Administrator, Notice was mailed out to the approximately 2,889 Settlement Class Members.

**G.** **The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on April 16, 2021, via first-class mail. A total of 2,289 Class Notices were mailed to members of the Settlement Class. (*See* Declaration of Keith Salhab from American Legal Claims Services, LLC, ¶ 3) (hereinafter "Salhab Dec.").

The Class Notice provided Settlement Class Members with all required information relating to the Settlement including: (1) a summary of the lawsuit and an overview of the nature of the claims; (2) the definition of the Settlement Class certified by the Court; (3) a clear description of the material terms of the Settlement; (4) an explanation of the claims being released; (5) an explanation of Settlement Class Members' rights; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the final approval hearing; (8) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; and, (9) identification of Class Counsel and information regarding the compensation that they would seek pursuant to the Settlement Agreement.

The Settlement website provided Settlement Class Members with access

to the following documents: (i) the Long Form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and Release, with exhibits; (vi) Joint Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order.  The Long Form of Notice included a set of Frequently Asked Questions ("FAQs") and answers about the Settlement.

ALCS also set up a toll-free telephone support line that Settlement Class Members could call to obtain additional information. Thus, Notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval.  The Settlement Class Members overwhelmingly accepted the Settlement.  None objected. (*See* Salhab Dec., ¶¶ 9-10).  Only three asked to be excluded.  (*See* Salhab Dec., ¶¶ 9-10).  Not only that, it is estimated that 100% of Settlement Class Members received the Class Notice.  (*See* Salhab Dec., ¶ 8).   Given these facts, the Class Members' reactions were overwhelmingly positive.

## II.   THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

### A.   The Class Has Already Been Certified on a Preliminary Basis.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 35).  Since the Court's Preliminary Approval Order, no objections addressing class certification were received.  Thus, there is no reason to re-visit the Court's prior

ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

## B.    Notice to the Class under Fed.R.Civ.P. 23(e)(1).

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by send out the Court-approved short form version of the notice to all 2,889 class members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information. Thus, notice was sufficient.

## C.    Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and

(4) the proposal treats class members equitably relative to each other.  This standard is satisfied here and the Court should enter a Final Order approving the Class Action Settlement Agreement.

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that Rob Kaintz and the undersigned have adequately represented the class.   This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Rob Kaintz, is adequate given that his interests are equivalent to those of the Settlement Class.  He was actively involved in this case from its inception, including providing the original documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in settlement discussions, and also attending the Zoom mediation. Furthermore, there is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. He, along with his

counsel, secured a six-figure settlement from a highly-sophisticated Defendant in favor of the class members he represents.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously-filed declarations by class counsel, *see* Docs. 27-5 (Hill Decl.), and 27-6 (Justice Decl.), and the attached declaration. In fact, the undersigned are the only attorneys (of which the undersigned is aware) to be appointed as class counsel in a COBRA notice case in the Middle District of Florida, including in *Vazquez v. Marriott International, Inc.,* M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF (appointed as class counsel in COBRA class action case involving over 19,000 class members). Additionally, the undersigned have been appointed as class counsel in several other COBRA class action cases, including most recently in *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled

to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

**2.    The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. Not only that, the Parties used a highly-respected mediator in this case. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to the Class Members.

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately \$38.90 and a net payment of approximately \$18.54.[5] These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida. This recovery falls well within the range of reasonableness for settlement purposes. *See e.g., Vazquez v. Marriott International, Inc.*, M.D.

---

[5] \$112,400 - \$37,466.66 (attorneys' fees) - \$478.45 (litigation costs) - \$20,896 (settlement admin costs) = \$53,558.89 / 2,889 = \$18.54.

Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and

14

(6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir.

2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Plaintiff still had to establish that class certification was warranted, and further demonstrate the merits of his claim, both individually and on behalf of any class. Each of these remaining phases of the litigation presents serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the

Parties' Settlement Agreement the Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff also supports the Settlement as do the Class Members— evidenced by the lack of objections and low exclusion rate.

### 4. **The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $38.90 and a net payment of approximately $18.54. These amounts are consistent with COBRA class action settlements approved by other federal courts, including here in the Middle District of Florida.[6]

---

[6] *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 member class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

Moreover, this a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiff had chosen to continue to litigate his claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiff overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse

judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members.  *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all.  Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay.  Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

**D.    The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.**

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 27-2, pp. 2-25, the settlement agreement for which they seek final approval. Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

## III.    CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## IV.    CERTIFICATE OF GOOD FAITH.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

DATED this 2nd day of July, 2021.

Respectfully submitted,

/s/Brandon J. Hill
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
***Attorneys for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of July, 2021, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Brandon J. Hill
**BRANDON J. HILL**